CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

OCT 14 2020

JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| DEREK O'NEAL DIVENS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 4:19cv00001 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| MAUST TRUCKING, INC., and | ) | By: Hon. Thomas T. Cullen |
| ROBERT E. RITTER, III, | ) |     United States District Judge |
| | ) | |
| Defendants. | ) | |

After the discovery deadline in this personal-injury matter had passed, Defendants Maust Trucking and Robert Ritter ("Defendants") supplemented their expert-witness disclosures, noticing their intent to call two new experts to opine on the existence of Plaintiff Derek Divens's alleged traumatic brain injury ("TBI"). Defendants also filed a motion to continue the trial date, arguing that these late-designated experts needed additional time to conduct a physical examination of Divens and develop opinion testimony related to their findings.

Divens opposes both efforts, asserting that the supplemental expert disclosures were untimely under the applicable pretrial deadlines; that Defendants cannot meet their burden for excusing this tardiness; and that a second trial continuance would be unduly prejudicial.[1]

---

[1] Although Divens initially styled his opposition to the supplemental disclosures as a "Motion to Strike" under Fed. R. Civ. P. 11(c)(1)(C), the court construes his opposition, based on the case's procedural posture (*i.e.*, past the deadline for discovery and dispositive motions and within three weeks of trial) and the nature of the relief requested, as a motion *in limine* to exclude expert testimony.

The parties have fully briefed and argued these issues, and the matter is now ripe for decision. For the reasons stated below, the court will deny the motion to continue the trial and grant Divens's motion to exclude the late-noticed experts.

I.

In January 2019, Divens filed suit against Maust Trucking, Inc. and Robert Ritter, one of Maust's truck drivers, as a result of a collision involving his automobile and a tractor trailer driven by Ritter on the Route 58 bypass near Martinsville.[2] The court entered its Pretrial Order on March 20, 2019, establishing requirements and deadlines for filing motions, conducting discovery, and noticing expert witnesses.[3] (ECF No. 6.) Specifically, the Pretrial Order states that expert-witness reports "must be furnished to the opposing party(s) in a timely fashion" such that discovery can be completed by the discovery deadline of 45 days prior to trial. (*Id.*)

The court initially set this matter for trial on February 5-7, 2020. (ECF No. 9.) Based on this trial setting and the Scheduling Order, the parties submitted a Joint Rule 26(f) Report establishing a schedule and deadlines for, among other things, the parties' expert-witness disclosures. (ECF No. 10.) The Joint Rule 26(f) Report stipulated that Divens's initial expert disclosures were due on September 17, 2019, and that Maust Trucking and Ritter would provide their initial expert disclosures by October 19, 2019.

By agreement of the parties, these expert-witness deadlines were extended. Divens ultimately noticed six expert witnesses, including a neurologist, Dr. Jill Cramer, M.D., and a

---

[2] The defendants have conceded liability for the collision; the only contested issue, which the parties will try to a jury, is damages.

[3] The Hon. Jackson L. Kiser presided over this case from the outset, until January 2020, at which point the Hon. Michael F. Urbanski took it over. In September 2020, Chief Judge Urbanski transferred the case to the Hon. Thomas T. Cullen. At no time did any judge vacate Judge Kiser's initial scheduling order.

neuropsychologist, Dr. Ella Pecsok, Ph.D., on October 17, 2019; on December 17, 2019, Defendants noticed a neurologist, Dr. John O'Bannon, M.D., as an expert witness.

In early 2020, the court rescheduled the jury trial from February to November 4–5, 2020. (ECF Nos. 16, 19.) This continuance, which predated the COVID-19 outbreak, had the effect of extending the discovery period for an additional seven months to a new cut-off date of September 18, 2020.

On September 23, 2020, four days after the extended discovery period had closed—and approximately nine months after the expert-witness disclosure deadlines adopted by the parties had passed—Defendants served their supplemental expert designations, naming Dr. Scott Bender, Ph.D., a neuropsychologist, and Dr. Bruce Cohen, M.D., a second neurologist, as potential witnesses. Defendants then moved to continue the jury trial, currently set to begin on November 2, 2020, so that these new experts could conduct a physical examination of Divens and prepare to testify about his alleged TBI. (ECF No. 27.)

II.

Federal Rule of Civil Procedure 26(a)(2) requires, among other things, that the parties disclose the names of potential expert witnesses in accordance with the court's orders. "Rule 26 disclosures are often the centerpiece of discovery in litigating of expert witnesses. A party that fails to provide these disclosures unfairly inhibits its opponent's ability to properly prepare, unnecessarily prolongs litigation, and undermines the district court's management of the case." *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 278-79 (4th Cir. 2005).

When a party violates Rule 26(a) or a scheduling order, district courts may impose sanctions, including the exclusion of evidence. *See* Fed. R. Civ. P. 16(f) (scheduling-order

violation); 37(b)(2)(A) (discovery-order violation). Rule 37(c)(1) provides that "[a] party that . . . fails to disclose information required by Rule 26(a) or (e) . . . is not allowed to use that information or witness . . . at trial, unless the failure was substantially justified or harmless."

In determining whether to excuse a party's failure to disclose its expert witnesses in a timely manner, a district court must consider five factors: (1) the surprise to the party against whom the witness was to have testified; (2) the ability of the party to cure that surprise; (3) the extent to which allowing the testimony would disrupt the trial; (4) the explanation for the party's failure to name the witness before trial; and (5) the importance of the testimony. *Southern States Rack & Fixture, Inc., v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003). Under its authority to manage trial proceedings, a district court has "particularly wide latitude" to exclude expert-witness testimony that does not comply with these rules. *See Northrop Grumman Corp.*, 427 F.3d at 279.

III.

It is undisputed that Defendants' supplemental expert notices are untimely under Rule 26(a) and the court's prior orders. The Pretrial Order governing this case provides that each expert witness must prepare a written report meeting the requirements of Rule 26, and that this report must be provided to opposing counsel "in a timely fashion," so that any needed discovery related to the expert can be completed by the discovery deadline. (*See* ECF No. 6 ¶¶ 7, 9.) The Pretrial Order further mandates that, "[i]n all events discovery (both written and oral) must be completed 45 days prior to trial." *Id.* Defendants provided their supplemental

expert designations to Divens nine months after the amended Rule 26(f) expert-disclosure deadlines and several days after the 45-day discovery cut-off.[4]

At first glance, the lateness of the supplemental expert disclosure may appear trivial, but it is not. Defendants made their supplemental expert disclosures after the close of discovery. Barring a second continuance of the trial, it is highly unlikely that these witnesses will be able to conduct an evaluation, or that Divens, in turn, will have adequate time to depose these witnesses and assess the impact of their potential testimony on the factual record previously established through timely disclosed expert witnesses. The late timing of the supplemental expert disclosures must also be considered in conjunction with the initial filing of the suit (January 2019), Defendants' amended 26(f) disclosure deadlines (December 2019), the nine-month trial continuance, and the attendant seven-and-a half month discovery extension. Considered in that context, and in light of the practical challenges associated with reopening the record in a matter that was essentially developed prior to the onset of the COVID-19 pandemic, the delay is material. It is also not in keeping with the spirit of the Pretrial Order, which requires "timely" expert disclosure so that the parties can conduct discovery fairly and in an orderly fashion.

Applying the five-factor test referenced above, Defendants have not demonstrated that their failure to comply with Rule 26 and the Pretrial Order "was substantially justified or harmless." *Wilkins v. Montgomery*, 751 F.3d 214, 222 (4th Cir. 2014) ("The burden of

---

[4] To be sure, a few days' delay would not typically invoke the court's ire. But the deadline in the Pretrial Order expressly noted that disclosure of experts must be timely such that discovery can be completed by the 45-day cutoff. (ECF No. 6 ¶ 9.) Defendants' four-day delay is actually much more.

establishing these factors lies with the non-disclosing party[.]") (citing *Southern States*, 318 F.3d at 596).

First, the timing of the supplemental disclosures—nine months after the 26(f) deadline and following the discovery cut-off—evidences surprise to Divens. Divens's counsel asserts they had no indication, at any point during the protracted discovery period, that Defendants would seek to call new medical experts on the core issue of a TBI.

Defendants contend that any surprise that may have resulted is mitigated by the fact that the late-noticed experts' opinions and anticipated testimony are consistent with Dr. O'Bannon's and "can be easily reconciled as none state Plaintiff suffered a permanent brain injury." (Defs.' Br. in Opp. pg. 3, ECF No. 39.) But Defendants' argument glosses over the material difference between Dr. O'Bannon's initial findings and those of the late-noticed experts. Dr. O'Bannon's report notes that Divens "developed severe PTSD and severe depression with multiple vegetative and cognitive symptoms." (ECF No. 39-2, Ex. A.) Dr. O'Bannon adds that Divens suffered a possible "mild concussion," and that "[t]here is modest evidence for traumatic brain injury." (*Id.*) Drs. Bender and Cohen, on the other hand, opine that the medical evidence better supports the conclusion that Divens's symptoms were caused by PTSD and depression, and dismiss the possibility of a TBI. (*See id.* Exs. C, E.) Although there is some congruence in this testimony—for instance, their agreement on the possible existence of a minor concussion—there is a critical difference: Dr. O'Bannon acknowledges the possibility of a TBI, while the late-noticed experts reject it entirely.  This key conflict undermines Defendants' argument regarding the supplemental nature of the late-noticed evidence and its limited impact on Divens's case in the three weeks before trial.

Second, given the late timing of the disclosures, Divens would not have a meaningful opportunity to cure this surprise. Although Defendants suggest that a Rule 35 physical examination of Divens and the attendant expert depositions and factual development could be accomplished with minimal delay and disruption, this argument misses the mark. Assuming that Defendants could arrange for their late-noticed experts to conduct a physical examination and that Divens could then depose these experts and prepare rebuttal evidence in the three weeks before trial, this would be a substantial undertaking for the parties—in particular, Divens and would undoubtedly affect their final pretrial preparations. As this court concluded in a similar case involving late-disclosed experts: "As for the opportunity to take the depositions of two physicians and a nurse in the limited time still remaining before trial, Defendants fail to explain how it could be 'fair' for counsel for Plaintiffs to divert their time, energy, and resources away from trial preparation to undertake activity that, were it to be undertaken at all, should have occurred months ago pursuant to the amended scheduling order." *Scott v. Clark*, Case No. 3:12CV36, 2014 U.S. Dist. LEXIS 150494, at *7 (W.D. Va. Oct. 22, 2014). The same concerns apply in this case.

Third, reopening expert discovery at this late stage would be disruptive to the proceedings. As evidenced by Defendants' motion to continue, permitting these experts to testify at trial would involve continuing the trial date for a second time. It would also require Plaintiff to expend substantial time and resources responding to and rebutting expert testimony that will likely contradict, to a certain extent, expert opinions previously developed and proffered by Defendants.

Fourth, although the proffered testimony would certainly be relevant to the issue of TBI, its relevance—and likely importance—highlights the seriousness of not noticing it in a timely fashion. Put simply, if supplemental expert testimony was critical to Defendants' case, it should have been disclosed well before the discovery cut-off. *See Southern States*, 318 F.3d at 598-99 ("The fact that the expert's testimony regarding the paint formula might have been helpful to the jury also points out why it should have been disclosed in a timely manner [to the defendants].")

Fifth, Defendants, as they must, have not offered a persuasive explanation for failing to notice these experts in time. Defendants essentially argue that they should be permitted to pursue and introduce new expert testimony for two reasons: (1) that Divens's treatment for his injuries, including the alleged TBI, has continued past the initial deadlines for expert disclosures, and that they should have an opportunity to assess that treatment—and Divens's possible recovery—closer to the time of trial; and (2) that the COVID-19 epidemic has delayed their ability to obtain more-recent medical records and a physical examination. Upon closer inspection, neither argument is compelling.

Defendants' position regarding the need to evaluate the status of Divens's rehabilitation closer to trial, although valid, is not determinative. Indeed, in virtually every case involving serious injuries, a party's treatment and rehabilitation continue well past the discovery phase—and in many cases, well past trial. Yet every case is governed by fixed discovery deadlines, and, barring extraordinary circumstances not existing here, a plaintiff's continued course of treatment does not warrant deviating from these important rules and the

orderly progression of discovery.[5] The court further notes that Defendants' argument regarding the need for an updated evaluation of Divens is undermined by the fact that Defendants want someone other than their original neurological expert to conduct that assessment.

In support of the fifth *Southern States* factor, Defendants also assert they were unaware of Divens's treatment with Dr. Pecsok, a neurological psychologist, until October 2019, and the existence of Dr. Barton, Divens's neurologist, until December 2019, or just before the initial-disclosures deadline. But Defendants apparent inactivity for a prolonged period after Divens made those disclosures undercuts the reasonableness of their late response. Divens's timely disclosures in the fall of 2019 put Defendant on notice that the existence of a TBI would be a critical issue in the case. Defendants, however, failed to take any meaningful efforts over the next *nine months* to assess, develop, or challenge this evidence, and remained silent until September 22, 2020, after the discovery deadline had passed.

Although COVID-19 undoubtedly has altered many aspects of life—including the course of some federal litigation—there is no credible argument that it has affected this proceeding. Divens filed this case in early 2019, and the parties diligently proceeded through discovery based on the assumption that the trial would occur in February 2020. Although the court postponed the original trial date in January 2020—approximately one month before trial—the case was largely developed by that point. Defendants, moreover, have not made more than the conclusory assertion that the onset of COVID in March 2020 limited their

---

[5] This argument, if adopted, would be the exception that swallows the rule, as every case without a discrete and finite injury would result in endless delays and continuances, and virtually no civil action would ever make it to trial.

ability to conduct necessary additional discovery, including noticing new experts or seeking a physical examination of Divens between the onset of the pandemic in March and the discovery deadline of September 18, 2020.

Finally, Maust Trucking and Ritter cite the Fourth Circuit's opinion in *Bresler v. Wilmington Trust,* 855 F.3d 178 (4th Cir. 2017), in support of their argument that this court should excuse the late expert notices in this case. But the facts of *Bresler* are materially different. In *Bresler*, the Fourth Circuit held that the district court did not abuse its discretion in allowing a timely disclosed expert witness to testify and present summary evidence on an alternative theory of damages that the witness had failed to set forth in his initial report. *Id.* at 190–91. In this case, Defendants are not seeking to supplement the testimony of their timely disclosed expert, Dr. O'Bannon, on the issue of TBI.[6] To the contrary, Defendants want to call two *new* experts to provide evidence that contradicts, to a certain extent, the evidence and opinions of their original expert. The court's holding and analysis in *Bresler* are therefore not persuasive or controlling.

In sum, the *Southern States* factors do not support Defendants' position that the court should excuse their late disclosure.

IV.

For all of these reasons, the court will grant Divens's motion to exclude the late-noticed expert testimony and deny the motion to continue the trial. An appropriate order will be entered.

---

[6] Indeed, if Defendants were merely seeking to supplement Dr. O'Bannon's testimony, they would have a much stronger argument.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

**ENTERED** this 14th day of October, 2020.

*/s/ Thomas T. Cullen*
_____
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE